**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JOE MICELI,

        Plaintiff,

v.                                    Civ. No. 20-cv-1231 SMV/SCY

SOUTHWIND MANAGEMENT CORP.,
SPINNAKER RESORTS INC. and Jane Does 1-10

        Defendants.

**DEFENDANTS SOUTHWIND MANAGEMENT CORP'S. AND SPINNAKER
RESORTS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF
PERSONAL JURISDICTION WITH INCORPORATED MEMORANDUM OF LAW**

       Defendants Southwind Management Corp. ("Southwind") and Spinnaker Resorts, Inc.

("SRI") (together, "Defendants") through undersigned counsel and pursuant to Federal Rule of

Civil Procedure 12(b)(2), file this Motion to Dismiss Plaintiff Joe Miceli's Complaint for lack of

personal jurisdiction.  In support thereof, Defendants hereby state as follows.

## INTRODUCTION

       In this action, Plaintiff Joe Miceli alleges that Defendants used an automatic telephone

dialing system ("auto-dialer") and intentional Caller ID spoofing practices to call his wireless

telephone in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227

("TCPA").  Plaintiff also claims violations of the New Mexico Unfair Practices Act, N.M.S.A. §

57-12-22, *et seq.* ("NMUPA"), trespass to chattels, and civil conspiracy arising from the same

alleged telephone calls.

SRI is a Florida corporation with its headquarters location in Hilton Head Island, South Carolina.  SRI is a real estate company with no employees.  SRI does not engage in telemarketing of potential customers in New Mexico or any other state.

Until January 1, 2020, Southwind was a South Carolina corporation with its headquarters location in Hilton Head Island, South Carolina.  Southwind managed resort properties in South Carolina, Missouri, and Florida.  Southwind also provided human resources and corporate administrative services to other companies pursuant to contractual agreements.  On January 1, 2020, Southwind was merged into Spinnaker Resorts, Inc.  Southwind did not engage in telemarketing in New Mexico or any other state.

For these and many other reasons, Southwind and SRI do not have the constitutionally required minimum contacts with New Mexico to permit this Court's exercise of personal jurisdiction over them.  A New Mexico court's assertion of personal jurisdiction over Defendants would violate their respective Constitutional rights by forcing Defendants to defend a civil suit in a jurisdiction where Defendants are not licensed to do business, never transacted business of any kind including telemarketing, do not employ a sales or marketing staff, do not advertise, own no property, and do not maintain an office or bank account.

Well-established principles of due process under the Federal Constitution protect Defendants from being forced to litigate this action in New Mexico.  Because Plaintiff cannot meet his burden of establishing that Defendants are subject to personal jurisdiction in a New Mexico court, this Court should grant Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## FACTUAL AND PROCEDURAL BACKGROUND

**A.     Plaintiff's Complaint.**

On or about October 7, 2020, Plaintiff filed an action against Defendants in the Thirteenth Judicial District Court of the State of New Mexico, County of Sandoval.  [ECF No. 1-1].  In the Complaint, Plaintiff alleges Defendants made telemarketing calls to him in violation of the TCPA and the NMUPA, and the alleged calls also constituted trespass to chattels and civil conspiracy.  [ECF No. 1-1, ¶¶ 71-85].  Defendants removed Plaintiff's action to this Court on November 24, 2020.  [ECF No. 1].

Plaintiff's Complaint alleges that Defendants "repeatedly called Plaintiff's wireless phone" using an auto-dialer and Caller ID spoofing.  [ECF No. 1-1, ¶ 30].  According to Plaintiff, his wireless telephone number "has at all relevant times been continuously listed on the National Do-Not-Call Registry."  [ECF No. 1-1, ¶ 63].  Plaintiff alleges the telemarketers "lied to Plaintiff, telling him [the call] was from a major hotel chain such as 'Ritz Carlton', 'Marriott', or 'Wyndham.'"  [ECF No. 1-1, ¶ 34].  Plaintiff does not allege that the callers identified themselves as calling from—or on behalf of—SRI or Southwind.

Plaintiff claims that when he was called, he listened to a pre-recorded message, and then to a sales pitch from a live person; Plaintiff expressed interest in purchasing a vacation package.  [ECF No. 1-1, ¶¶ 35, 36].  Plaintiff alleges that after he expressed interest in making a purchase, he was called back and spoke to two individuals, with whom he negotiated the purchase of a vacation package.  [ECF No. 1-1, ¶¶ 37-39].  The same day, Plaintiff paid a deposit for the vacation package with his credit card.  [ECF No. 1-1, ¶¶ 41, 42].

Plaintiff alleges that subsequent to his purchase of a vacation package a confirmation email was sent to the email address "mitchell6855@gmail.com" with an attached confirmatory letter addressed to "Mary Miceli" and "Michell Miceli".  The "Terms and Conditions" contained in the

confirmation letter state, in part: "This offer is made on a space available basis and is sponsored by Resort Sales, Inc. as part of an advertising plan for vacation ownership." [ECF No. 1-1, ¶¶ 49, 50, & pp. 20-22

Based on the foregoing, Plaintiff alleges a "direct connection exists between all Defendants herein and the calls complained of" because the calls "were directly made on behalf of Defendants." [ECF No. 1-1, ¶ 67]. Plaintiff alleges that Defendants are directly or vicariously liable for the alleged calls under the TCPA, NMUPA, and the common law. [ECF No. 1-1, ¶¶ 71-85].

## B.    Spinnaker Resorts, Inc.

SRI is a corporation organized and existing under the laws of the state of Florida with its principal place of business in Hilton Head Island, South Carolina. Exh. A, ¶ 6 (Declaration of Basil W. Matthews dated January 7, 2021 ("Mathews Decl.")). SRI is a real estate company that owns and sells time share property interests, engaging the services of wholly owned subsidiaries to support the sale of those property interests. *Id*., ¶ 7. SRI does not have any employees. *Id*., ¶ 8. SRI does not conduct telemarketing activities or make telephone calls to solicit sales from potential customers. *Id*., ¶ 9. SRI does not hire or contract with independent third-party marketing vendors to conduct telemarketing activities. *Id*., ¶ 21. As a natural result, SRI did not make any of the calls alleged by Plaintiff. *Id.*, ¶ 20.

SRI does not own property in New Mexico, it does not maintain an office or bank account in New Mexico and does not have a telephone number or a telephone directory listing in New Mexico. *Id*., ¶¶ 9-11, 14. SRI is not licensed to do business in New Mexico and does not have a registered agent there. *Id*., ¶¶ 15, 16. SRI does not transact business or advertise in New Mexico. *Id*., ¶¶ 12, 17. It does not pay taxes in or to New Mexico. *Id*., ¶ 13. It does not sponsor, conduct, or participate in any sales promotion event, trade show, or conference in New Mexico. *Id.*, ¶ 18.

All telemarketing activities directed to potential customers are conducted by Resort Sales Missouri, Inc., or by Resort Sales by Spinnaker, Inc. (together, the "Resort Sales Companies"), or by independent telemarketing vendors hired by these companies.  Exh. A, ¶ 22.  The Resort Sales Companies are wholly owned subsidiaries of SRI that maintain separate corporate and financial identities from SRI and from each other.  *Id.*, ¶ 23.  SRI does not control the day-to-day operations or management of the Resort Sales Companies.  *Id.*, ¶ 24.

Each of the Resort Sales Companies employs its own operating personnel and makes all of its own personnel, marketing, and management decisions.  *Id.*, ¶¶ 26, 28.  Each of the Resort Sales Companies prepares and maintains its own set of financial books, records and statements.  *Id.*  Each of the Resorts Sales Companies has its own bank accounts and credit card merchant accounts.  *Id.*  And each of the Resort Sales Companies prepares and submits its respective corporate filings to its state of incorporation.  *Id.*

The "Spinnaker Resorts" name is a brand identifier for a family of companies that includes Resort Sales Missouri, Inc. and Resort Sales by Spinnaker, Inc.  Exh. A, ¶¶ 29, 30.  The brand includes a logo of a sailing ship with the words "Spinnaker Resorts" below it, and a website at spinnakerresorts.com.  *Id.*, ¶¶ 29, 30.

**C.     Southwind Management Corp.**

Southwind Management Corp. no longer exists as a corporate entity; it merged into SRI on January 1, 2020.  Exh. A, ¶ 32.  Prior to the merger, Southwind was a corporation organized under the laws of the state of South Carolina with a principal place of business located in Hilton Head Island, South Carolina.  *Id.*, ¶ 31.  Southwind was a property management company that managed resort properties located in South Carolina, Missouri, and Florida.  *Id.*, ¶ 33.  Southwind also provided human resources and corporate administrative services to other companies pursuant to contractual agreements.  *Id.*

5

Southwind did not conduct telemarketing activities or make any telemarketing calls.  *Id.*, ¶ 34.  Southwind did not hire or contract with independent third-party marketing vendors to conduct telemarketing activities.  *Id.*, ¶ 35.

Southwind did not own property in New Mexico, did not maintain an office in New Mexico, and did not have a telephone number or telephone directory listing in New Mexico.  *Id.*, ¶¶ 36-38.  Southwind was not licensed to do business in New Mexico, had no registered agent in New Mexico, and did not advertise or transact business in New Mexico.  *Id.*, ¶¶ 39, 42-44. Southwind did not have a bank account in New Mexico and did not pay taxes in or to New Mexico or any New Mexico political subdivision.  *Id.*, ¶¶ 40, 41.  Southwind did not sponsor, conduct, or participate in any sales promotion event, trade show, or conference in New Mexico.  *Id.*, ¶ 45.

**D.    SRI Has Been Dismissed From Two Other TCPA Actions Because It Does Not Make Telemarketing Calls.**

The "sworn statement of Defendants' officer Basil Matthews," on which Plaintiff relies in his complaint, see ECF No. 1-1, ¶¶ 13-16 & attachment pp. 1-3, originates from a TCPA action filed against SRI that was dismissed for lack of personal jurisdiction.[1]

**1.    The District of New Jersey dismissed a similar TCPA Action against SRI for lack of personal jurisdiction.**

An action was filed against SRI in the District of New Jersey in 2016, wherein the plaintiff alleged violations of the TCPA (the "New Jersey action").  Exh. B, at *1 (Aug. 3, 2017 Opinion of the Hon. Jose L. Linares, U.S.C.J., D.N.J., in the case titled *Henna Cardenas v. Spinnaker Resorts, Inc.*, Case No. 16-2466-JLL).  SRI first moved to dismiss for lack of personal jurisdiction in 2016, which motion was *initially* denied without prejudice.  *Id.*  While there was no question

---

[1]    This Court may take judicial notice of a fact that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  *Estate of Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016) (citing Fed. R. Evid. 201(b)).  Defendants posit the decisions of sister courts fall within this category.  *Id.*

that SRI never made any telemarketing calls, the court allowed the plaintiff to pursue jurisdictional

discovery to determine whether SRI's two sales subsidiaries made the telemarketing calls on behalf

of SRI, so as to subject SRI to personal jurisdiction based on agency principles.  *Id.*, at *1-2.

The plaintiff pursued ten months of jurisdictional discovery and, thereafter, SRI renewed

its motion to dismiss for lack of personal jurisdiction.  *Id.*  The court granted SRI's motion and

dismissed the action.  Exh. C (Aug. 3, 2017 Order of the Hon. Jose L. Linares, U.S.C.J., D.N.J., in

the case titled *Henna Cardenas v. Spinnaker Resorts, Inc.*, Case No. 16-2466-JLL).  In its opinion,

the court found that "since [SRI] itself did not make the calls in question to Plaintiff, and Plaintiff

fails to allege other ways in which Defendant purposefully availed itself of the forum, the Court

does not have specific jurisdiction over Defendant."  Exh. B, *6.[2]  The court further ruled that SRI

was not subject to specific jurisdiction based on allegations that it was vicariously liable for the

actions of its subsidiaries.  *Id.* At *5 ("The Court finds that the Resort Sales Companies are not

agents of Defendant for jurisdictional purposes . . . .")].

**2.      The District of South Carolina relied on the District of New Jersey decision and dismissed a second TCPA action filed against SRI.**

The plaintiff in the New Jersey action refiled against SRI in the District of South Carolina

but, once again, the court dismissed the action—this time for failure to state a claim.  Exh. D, at

10 (Mar. 5, 2019 Order of the Hon. Bruce Howe Hendricks, U.S.D.J, D.S.C., in the case titled

*Henna Cardenas v. Spinnaker Resorts, Inc.*, Case No. 9:18-cv-00761-BHH).  Relying on the New

Jersey action, the court applied issue preclusion and ruled: "Stated plainly, the Court finds that

---

[2]      The plaintiff conceded that the court did not have general jurisdiction over Spinnaker or its subsidiaries.  Exh. B, at *4.

Plaintiff is precluded from alleging that Defendant itself made phone calls to her based on the New Jersey court's findings—and Plaintiff apparently concedes as much." *Id.* at 9.[3]

## MEMORANDUM OF LAW

### I.    STANDARD OF REVIEW

#### A.    Motions Under Rule 12(b)(2)

The plaintiff bears the burden of demonstrating there is personal jurisdiction over the defendant and the exercise of personal jurisdiction would not violate due process requirements. *Overton v. United States*, 925 F.2d 1282, 1283 (10th Cir. 1991).  On a motion to dismiss for lack of personal jurisdiction, the facts from the Complaint are to be taken as true to the extent they are uncontroverted by the defendant's affidavit.  *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984).  But, when a defendant presents credible evidence through affidavits or other materials suggesting a lack of personal jurisdiction, "the plaintiff must come forward with sufficient evidence to create a genuine issue of material fact on the issue."  *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992).

Without the benefit of an evidentiary hearing, the plaintiff is required to make a prima facie showing of personal jurisdiction.  *AST Sports Sci., Inc. v. CLF Distrib'n Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008).  But even a prima facie showing can be defeated where the defendant presents "a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

---

[3]    On the plaintiff's motion for reconsideration, the court granted limited relief to allow the plaintiff to try and pursue Spinnaker's subsidiaries in a separate action, if otherwise permitted. Exh. E, at 5-6. (July 3, 2019 Order of the Hon. Bruce Howe Hendricks, U.S.D.J., D.S.C., in the case titled *Henna Cardenas v. Spinnaker Resorts, Inc.*, Case No. 9:18-cv-00761-BHH).

The plaintiff cannot rely on mere conclusory allegations in the complaint to meet this burden. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "Only if the plaintiff meets the obligation of contesting the credible evidence that the defendant presents does the court resolve the factual disputes in favor of the plaintiff." *Clark v. Meijer, Inc.*, 376 F.Supp.2d 1077, 1082 (D.N.M. 2004) (citing *Wenz*, 55 F.3d at 1505).

## II.    ARGUMENT

### A.    This Court Should Dismiss the Action for Lack of Personal Jurisdiction.

The party seeking to establish personal jurisdiction over a foreign litigant must make two showings: (1) the exercise of jurisdiction is sanctioned by the state's long-arm statute; and (2) it comports with the due process requirements of the Fourteenth Amendment. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). New Mexico's long-arm statute provides jurisdiction to the fullest extent permitted by the due process requirements of the United States Constitution. *Res. Assocs. Grant Writing & Evaluation Servs. v. Southampton Union Free Sch. Dist.*, 193 F.Supp.3d 1200, 1220 (D.N.M. 2016). As such, the Court need not conduct a statutory analysis apart from the due process analysis. *Marcus Food Co.*, 671 F.3d at 1166.

Due process requires that each defendant have minimum contacts with the forum state and that the Court's exercise of jurisdiction over the parties would not offend traditional notions of fair play and substantial justice. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts can be analyzed under two distinct theories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

### 1.   This Court Lacks General Jurisdiction Over Defendants.

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe*, 326 U.S. at 317). A corporation may be "fairly regarded as at home" in a place equivalent to an individual's domicile. *Goodyear*, 564 U.S. at 924.

The Supreme Court confirmed the narrow applicability of the general jurisdiction doctrine in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). *Oliver v. Funai Corp.*, No. 14-cv-04532, 2015 WL 9304541, at *7 (D.N.J. Dec. 21, 2015) (Linares, J.). "*Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760. A foreign corporation's affiliations with the forum State must be "comparable to a domestic enterprise in that State." *Daimler*, 134 S. Ct. at 758 (citing *Goodyear*, 564 U.S. at 919).

"[T]he inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.'" *Id*. at 761; *Am. Fid. Assurance Co. v. Bank of N.Y. Mellon*, 810 F.3d 1234, 1241 (10th Cir. 2016).

> With respect to a corporation, the place of incorporation and principal place of business are "paradigm bases for general jurisdiction." Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable.

*Daimler*, 134 S. Ct. at 760 (citations omitted). To go beyond these bases and "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous,

and systematic course of business would be "unacceptably grasping." *Id*. at 760-61 (citations omitted).

Neither SRI nor Southwind is "at home" in New Mexico. Defendants are not incorporated in New Mexico, nor are their respective principal places of business here. Defendants are not registered to do business in New Mexico, and neither has a physical presence in New Mexico. Even if Defendants conducted business in New Mexico (and they do not), that would still not be enough to confer general jurisdiction. *Daimler*, 134 S. Ct. at 761 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.").

Because Defendants cannot be said to be at home in this jurisdiction, this Court cannot constitutionally assert general personal jurisdiction over them.

### 2.     This Court Lacks Specific Jurisdiction Over Defendants.

Specific jurisdiction requires that the defendant purposefully directed his activities at residents of the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Dudnikov*, 514 F.3d 1063, 1071. And even if a plaintiff establishes both the "purposeful direction" and "arising out of" conditions, the Court must still inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *Int'l Shoe Co.*, 326 U.S. at 316; *Dudnikov*, 514 F.3d at 1080.

The minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). A defendant must take some action to purposefully avail itself of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Mach., Ltd. v. Nicastro*,

564 U.S. 873, 880 (2011) (plurality opinion) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The defendant's conduct and connection with the forum must be such that the defendant should reasonably anticipate being haled into court there.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Purposeful availment does not require the defendant to physically enter the forum, *Nicastro*, 564 U.S. at 882, but the defendant must deliberately target the forum with its actions.  *Dudnikov*, 514 F.3d at 1074 & n.9; *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995).

Plaintiff claims he received telephone calls from Defendants or someone acting on behalf of Defendants.  But neither SRI nor Southwind made telemarketing calls to Plaintiff; neither entity makes telemarketing calls at all.  Because Defendants did not make the alleged calls, they did not purposefully direct any activities to Plaintiff or any other resident of New Mexico.  Nor did either of the Defendants deliberately target the New Mexico market (or any other forum).

With regard to SRI, this issue has been previously decided in two sister districts, New Jersey and South Carolina.  SRI does not make telemarketing calls and does not have an agency relationship with its subsidiaries so, as a result, any TCPA action filed against it should be dismissed.  So too for Southwind, which also never made any telemarketing calls (and had no subsidiaries engaged in selling properties).

SRI is a real estate company with no employees.  It is not registered to do business in New Mexico and solicits no business there.  Southwind was a property management company that was never registered to do business in New Mexico and never solicited business there.  Purposeful availment is lacking and, necessarily, so, too, is specific jurisdiction.

## III.   CONCLUSION

For each of the foregoing reasons, Defendants Southwind Management Corp. and Spinnaker Resorts, Inc. respectfully request that this Court enter an Order dismissing Plaintiff's Complaint.

Dated: January 8, 2021

<div style="margin-left:40%">

Respectfully submitted,

BUTT THORNTON & BAEHR PC


*/s/ Monica R. Garcia*
Monica R. Garcia
P.O. Box 3170
Albuquerque, New Mexico 87190
T: (505) 884-0777
mrgarcia@btblaw.com

Attorneys for Defendants Southwind Management Corp. and Spinnaker Resorts, Inc.

</div>

I HEREBY CERTIFY that on January 8, 2021 the foregoing was submitted electronically through the CM/ECF system for filing and service on the following counsel of record:

**Counsel for Plaintiff:**
Sid Childress, Esq.
1925 Aspen Drive, No. 600A
Santa Fe, New Mexico 87505
T: (505) 433-9823
childresslaw@hotmail.com


*/s/ Monica R. Garcia*
Monica R. Garcia

# Exhibit A

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| JOE MICELI,<br><br>                                  Plaintiff,<br><br>    v.<br><br>SOUTHWIND MANAGEMENT CORP.,<br>SPINNAKER RESORTS, INC., and Jane Does<br>1-10,<br><br>                                 Defendants. | Civil Action No.: 1:20-cv-01231 (SMV) (SCY)<br><br>**DECLARATION OF BASIL W.<br>MATTHEWS IN SUPPORT OF<br>SOUTHWIND MANAGEMENT CORP.<br>AND SPINNAKER RESORTS, INC.'S<br>MOTION TO DISMISS** |

I, Basil W. Matthews, declare under penalty of perjury, the following:

1.     I make this Declaration in support of Defendants Southwind Management Corp. ("Southwind") and Spinnaker Resorts, Inc.'s ("SRI") (together "Defendants") Motion to Dismiss the Complaint for Lack of Personal Jurisdiction.

2.     Prior to January 1, 2020, I was employed by Southwind, and was the Comptroller for both Southwind and SRI.

3.     I am currently employed by SDC Properties, Inc., 35 DeAllyon Avenue, Hilton Head Island, South Carolina, as Comptroller. I have been in this position since January 1, 2020. I continue to act as Comptroller for SRI.

4.     I have reviewed the Complaint in this action, which alleges that Plaintiff is a New Mexico resident who claims to have received telemarketing calls on his wireless telephone line purportedly made by or on behalf of Defendants.

5.     I have personal knowledge of the facts presented herein. I make the following statements with respect to the allegations in Plaintiff's Complaint.

**SPINNAKER RESORTS, INC.**

6.      SRI is a corporation organized and existing under the laws of the state of Florida. SRI's principal place of business is 35 DeAllyon Road, Hilton Head Island, South Carolina 29928.

7.      SRI is a real estate company that owns and sells time share property interests, engaging the services of wholly-owned subsidiaries to support the sale of those property interests.

8.      At all times relevant to the Complaint, SRI did not have any employees.

9.      At all times relevant to the Complaint, SRI did not own property in New Mexico.

10.      At all times relevant to the Complaint, SRI did not maintain an office in New Mexico.

11.      At all times relevant to the Complaint, SRI did not have a telephone number or telephone directory listing in New Mexico.

12.      At all times relevant to the Complaint, SRI did not transact business in New Mexico.

13.      At all times relevant to the Complaint, SRI did not pay taxes in or to New Mexico or any New Mexico political subdivision.

14.      At all times relevant to the Complaint, SRI did not maintain a bank account in New Mexico.

15.      At all times relevant to the Complaint, SRI was not licensed to do business in New Mexico.

16.      At all times relevant to the Complaint, SRI did not have a registered agent in New Mexico.

17.      At all times relevant to the Complaint, SRI did not advertise in New Mexico.

18.     At all times relevant to the Complaint, SRI did not sponsor, conduct, or participate in any sales promotion event, trade show, or conference in New Mexico.

19.     At all times relevant to the Complaint, SRI did not conduct telemarketing activities or make telephone calls to solicit sales from potential customers.

20.     SRI did not make any of the calls alleged by Plaintiff.

21.     At all times relevant to the Complaint, SRI did not hire or contract with independent third-party marketing vendors to conduct telemarketing activities.

22.     All telemarketing activities directed to potential customers are conducted by Resort Sales Missouri, Inc., a Missouri corporation, or by Resort Sales by Spinnaker, Inc., a South Carolina corporation (together, the "Resort Sales Companies"), or by the independent telemarketing vendors hired by these companies.

23.     The Resort Sales Companies maintain separate corporate and financial identities from SRI and from each other.

24.     At all times relevant to the Complaint, SRI did not control the day-to-day operations or management of the Resort Sales Companies.

25.     The day-to-day operations and management of Resort Sales Missouri, Inc. are headed by its Executive Director of Sales and Marketing.  The Executive Director is not a corporate officer, employee or agent of SRI.

26.     Resort Sales Missouri, Inc. employs its own operating personnel and makes all its own personnel, marketing and management decisions.  Resort Sales Missouri, Inc. prepares and maintains its own set of financial books, records and statements, has its own bank accounts, and has its own credit card merchant accounts.  Resort Sales Missouri, Inc., prepares and submits all its required corporate filings to the State of Missouri, where it is incorporated.

27.     The day-to-day operations and management of Resort Sales by Spinnaker, Inc. are headed by its Executive Director of Sales and Marketing.  The Executive Director is not a corporate officer, employee or agent of SRI.

28.     Resort Sales by Spinnaker, Inc. employs its own operating personnel and makes all its own personnel, marketing and management decisions.  Resort Sales by Spinnaker, Inc. prepares and maintains its own set of financial books, records and statements, has its own bank accounts, and has its own credit card merchant accounts.  Resort Sales by Spinnaker, Inc. prepares and submits all its required corporate filings to the State of South Carolina, where it is incorporated.

29.     The logo of a sailing ship with "Spinnaker Resorts" underneath is a brand identifier for a family of companies that includes Resort Sales Missouri, Inc. and Resort Sales by Spinnaker, Inc.

30.     The "spinnakerresorts.com" website is part of the brand identity for a family of companies that includes Resort Sales Missouri, Inc. and Resort Sales by Spinnaker, Inc.

**SOUTHWIND MANAGEMENT CORP.**

31.     Prior to January 1, 2020, Southwind was a corporation organized under the laws of the state of South Carolina with a principal place of business located in Hilton Head Island, South Carolina.

32.     On January 1, 2020, Southwind merged into SRI; it no longer exists as a separate corporate entity.

33.     Southwind was a property management company that managed resort properties located in South Carolina, Missouri, and Florida, and provided human resources and corporate administrative services to other companies pursuant to contractual agreements.

34.     At all times relevant to the Complaint, Southwind did not conduct telemarketing activities or made any telemarketing calls.

35.     At all times relevant to the Complaint, Southwind did not hire or contract with independent third-party marketing vendors to conduct telemarketing activities.

36.     At all times relevant to the Complaint, Southwind did not own property in New Mexico.

37.     At all times relevant to the Complaint, Southwind did not maintain an office in New Mexico.

38.     At all times relevant to the Complaint, Southwind did not have a telephone number or telephone directory listing in New Mexico.

39.     At all times relevant to the Complaint, Southwind did not transact business in New Mexico.

40.     At all times relevant to the Complaint, Southwind did not pay taxes in or to New Mexico or any New Mexico political subdivision.

41.     At all times relevant to the Complaint, Southwind did not maintain a bank account in New Mexico.

42.     At all times relevant to the Complaint, Southwind was not licensed to do business in New Mexico.

43.     At all times relevant to the Complaint, Southwind did not have a registered agent in New Mexico.

44.     At all times relevant to the Complaint, Southwind did not advertise in New Mexico.

45.     At all times relevant to the Complaint, Southwind did not sponsor, conduct, or participate in any sales promotion event, trade show, or conference in New Mexico.

I hereby declare under penalty of perjury that the foregoing is true and correct.  Executed on January 7, 2021.

Basil W. Matthews

# Exhibit B

2017 WL 3315285
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States District Court,
D. New Jersey.

Henna CARDENAS, individually and
on behalf of a putative class, Plaintiffs,
v.
SPINNAKER RESORTS, INC., Defendant.

Civil Action No.: 16-2466 (JLL)
|
Signed 08/03/2017

**Attorneys and Law Firms**

Stefan Louis Coleman, Lakewood, NJ, for Plaintiffs.

Robert A. Assuncao, Steven F. Gooby, Ansa Assuncao,
LLP, East Brunswick, NJ, for Defendant.

**OPINION**

JOSE L. LINARES, Chief Judge

**\*1** This matter comes before the Court by way
of Defendant Spinnaker Resorts, Inc.'s ("Spinnaker")
Motion to Dismiss the Plaintiff's Complaint (ECF No.
1 ("Compl.")) pursuant to Rule 12(b)(2) of the Federal
Rules of Civil Procedure for lack of personal jurisdiction.
(ECF No. 25). Plaintiff Henna Cardenas has submitted an
opposition (ECF No. 29), to which Defendant has replied
(ECF No. 31). The Court decides this matter without oral
argument pursuant to Rule 78 of the Federal Rules of
Civil Procedure. For the reasons set forth below, the Court
grants the Motion to Dismiss.

**I. BACKGROUND** [1]

Plaintiff Cardenas, on behalf of a proposed class,
alleges that Defendant violated the Telephone Consumer
Protection Act of 1991, 47 U.S.C. § 227 ("TCPA")
by making unsolicited telephone calls. (Compl. ¶ 2).
Defendant is a Florida corporation with its headquarters
in Hilton Head, South Carolina, and purportedly
relies on unsolicited telemarketing as a way to increase
its customer base and generate sales for its vacation

ownership business. (Id. ¶¶ 1, 11). Defendant and/or its
agent made (and continue to make) multiple unsolicited
promotional calls to the landline telephones of Plaintiff,
and other members of the putative class, who are
registered on the "Do Not Call Registry," allegedly in
violation of the TCPA. (Id. ¶¶ 2, 13, 15, 31, 32). Recipients
of said phone calls have placed numerous online consumer
complaints regarding said conduct. (Id. ¶¶ 12, 17).

Plaintiff registered her landline phone number on the
Do Not Call Registry on February 9, 2010. (Id. ¶ 19).
Starting in or around April 2015, Plaintiff began receiving
multiple calls during the day on her landline telephone
from different New Jersey telephone numbers [2] from
"telemarketer[s] always identif[ying] themselves as calling
from 'Spinnaker Resorts.' " (Id. ¶¶ 20, 22; see also ECF
No. 10-1, Declaration of Henna Cardenas ("Cardenas
Decl.") ¶¶ 3-5). Plaintiff estimates that she has received at
least 70 unwanted calls since May 2015, and has received
as many as four calls per day. (Compl. ¶ 21). Despite
repeatedly telling the caller that she was not interested,
was on the "Do Not Call Registry," and not to call her
back again, Plaintiff continued (and continues) to receive
multiple calls a week. (Id. ¶¶ 23-28; Cardenas Decl. ¶¶
6-7). Plaintiff claims that she has suffered actual harm in
the form of annoyance, nuisance, and invasion of privacy.
(Compl. ¶ 30).

On May 2, 2016, Plaintiff commenced this action against
Spinnaker by filing a class action Complaint [3] alleging
four violations of the TCPA. (See generally Compl.).
Plaintiff alleges that this Court has personal jurisdiction
over Spinnaker because Spinnaker "conducts a significant
amount of business in this District, solicits consumers
in this District, made and continues to make unsolicited
calls in this District, and because the wrongful conduct
giving rise to this case occurred in, was directed to, and/
or emanated from this District." (Id. ¶ 8). On July 8,
2016 Spinnaker filed a Motion to dismiss for lack of
personal jurisdiction. (ECF No. 9). Plaintiff opposed this
motion on July 18, 2016 (ECF No. 10) and on July 25,
2016 Spinnaker replied (ECF No. 12). On August 3, 2016
this Court denied Defendant's Motion to Dismiss on the
basis that Plaintiff had alleged enough facts to entitle
her to jurisdictional discovery. (ECF No. 13). Thereafter,
jurisdictional discovery commenced in order to determine
whether a basis exists for this Court to exercise personal
jurisdiction over Spinnaker.

**\*2** On May 19, 2017 discovery concluded and on June 9, 2017 Defendant filed the instant Motion to Dismiss for lack of personal jurisdiction. (ECF No. 25). On July 3, 2017, Plaintiff opposed this Motion (ECF No. 29) and Defendant responded on July 24, 2017 (ECF No. 31).

## II. LEGAL STANDARD

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal citations omitted). Where, as here, the district court does not hold an evidentiary hearing, a plaintiff need only establish a "prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Additionally, "[i]f the contents of the plaintiffs complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." *Haffen v. Butler Specialties, Inc.*, 2011 WL 831933, \*2 (D.N.J. Mar. 3, 2011) (quoting 4 Wright & Miller, Federal Practice and Procedure: Civil 3d 1067.6 (3d ed. 2002)). The plaintiff, however, retains "the burden of demonstrating that the defendants' contacts with the forum state are sufficient to give the court in personam jurisdiction." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990). "These contacts must be shown 'with reasonable particularity.' " *Wellness Publ'g v. Barefoot*, 128 Fed.Appx. 266, 268 (3d Cir. 2005) (quoting *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc.*, 384 F.3d at 96 (3d Cir. 2004). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citing N.J. Ct. R. 4:4-4(c)). A district court sitting in New Jersey may therefore exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Henry Heide, Inc. v. WRH*

*Prods. Co., Inc.*, 766 F.2d 105, 108 (3d Cir. 1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." *Metcalfe*, 566 F.3d at 334. "General jurisdiction results from, among other things, 'systematic and continuous' contact between a non-resident defendant and the forum state." *Spuglio v. Cabaret Lounge*, 344 Fed.Appx. 724, 725 (3d Cir. 2009) (quoting *Int'l Shoe*, 326 U.S. at 320. "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.' " *Miller Yacht Sales*, 384 F.3d at 96 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

### A. General Jurisdiction

**\*3** " '[G]eneral jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state.' This is a fact-specific inquiry, and the 'nonresident's contacts to the forum must be continuous and substantial' to support the exercise of general jurisdiction." *Arpaio v. Dupre*, 527 Fed.Appx. 108, 113 (3d Cir. 2013) (internal citations omitted). In recent years, the United States Supreme Court has offered guidance on the level of "continuous and substantial" contacts that might justify the exercise of general or "all purpose" jurisdiction.

In *Goodyear Dunlop Tires Operations v. Brown* the Court addressed a situation in which the foreign subsidiaries of an American corporation challenged a North Carolina court's exercise of personal jurisdiction over them. 131 S. Ct. 2846 (2011). A unanimous Court discussed the parameters of general jurisdiction, writing that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 2853-54. The Court reiterated the principal that "[a] corporation's 'continuous activity of some sorts within a state' ... 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.' " *Id.* at 2856 (quoting *Int'l Shoe Co.*, 326 U.S. at 318). The Court further noted that neither regular purchases of goods from a state nor the sales of goods to a state were sufficient, in themselves, to subject an entity to general jurisdiction on claims unrelated to the sales/purchases. *Id.* at 2856-57 (citing *Helicopteros Nacionales De Colombia v. Hall*, 466

U.S. 408, 418 (1984)). As the Defendant subsidiaries in *Goodyear* had only "attenuated" contacts with the state (*i.e.*, their products were sold into the state via intermediaries) [4] and were "in no sense at home in North Carolina," the Court found that the subsidiaries were not subject to general jurisdiction in North Carolina's courts. *Id.* at 2857.

The Supreme Court confirmed the narrow applicability of the general jurisdiction doctrine in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). In *Daimler*, the Court rejected a formulation of the doctrine that would "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business,' " characterizing that broad definition as "unacceptably grasping." *Id.* at 761 (internal citation omitted). The Court observed that "the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.' " *Id.* at 761 (quoting *Goodyear*, 131 S. Ct. at 2851). The Court also clarified that "the general jurisdiction inquiry does not 'focus solely on the magnitude of the defendant's in-state contacts.' General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* at 762, n. 20. The Court ultimately found that there was "no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id.* at 760, 761-62.

### B. Specific Jurisdiction

**\*4** "Specific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (quoting *Burger King*, 471 U.S. at 472). In other words, specific jurisdiction exists where the "cause of action arises out of [t]he defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that

forum." *Abel v. Kirbaran*, 267 Fed.Appx. 106, 108 (3d Cir. 2008) (internal citations and quotations omitted).

Three elements must be met to establish specific jurisdiction. *HS Real Co., LLC v. Sher*, 526 Fed.Appx. 203, 206 (3d Cir. 2013). First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum. *Id.* Second, "plaintiffs' claims must arise out of or relate to at least one of the contacts with the forum." *Id.* (internal citations and quotations omitted). Third, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

Because the existence of specific jurisdiction depends on a link between the defendant's activity and the resulting harm, a specific jurisdiction analysis is necessarily claim specific. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ("Such a determination is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by [plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to [plaintiff]'s other claims.").

### III. ANALYSIS

Defendant contends that this Court does not have personal jurisdiction over it because Spinnaker is "not 'at home' " and "lacks minimum contacts [with the forum], either directly or under agency principles." (ECF No. 25 at 6). Specifically, Defendant argues that jurisdictional discovery proves that neither Resort Sales Missouri, Inc. nor Resort Sales by Spinnaker, Inc. (collectively, the "Resort Sales Companies"), the companies responsible for marketing Spinnaker's timeshares, are agents of Spinnaker for the purposes of jurisdiction. (Id.). Defendant further contends that even if the Resort Sales Companies were agents of Spinnaker, Plaintiff fails to show that either company made the calls in question. (ECF No. 31 at 7).

In opposition, Plaintiff argues that the Court can exercise jurisdiction over Defendant pursuant to an agency theory "because the subsidiaries conduct business in this District on Spinnaker's behalf, there is common ownership, Spinnaker supports its subsidiaries financially,

and Spinnaker controls its subsidiaries' affairs." (ECF No. 29 at 12). Plaintiff concedes that this Court does not have general jurisdiction over Spinnaker and/or its subsidiaries (ECF No. 29 at 23), thus the Court will only address specific jurisdiction.

In terms of specific jurisdiction, Defendant is a Florida corporation with its headquarters in South Carolina (Compl. ¶ 1) and allegedly does not have employees. (ECF No. 9-2, Declaration of Basil W. Matthews ("Matthews Decl.") ¶¶ 7, 9). Moreover, Defendant "does not conduct telemarketing activities or make telephone calls to solicit sales from potential customers." (Id. ¶¶ 10, 11). Instead, Defendant contends that "[all] telemarketing activities directed to potential customers are conducted by Spinnaker's subsidiary corporations Resort Sales Missouri, Inc., a Missouri Corporation, or Resort Sales by Spinnaker, Inc., a South Carolina corporation, or independent telemarketing companies they hire." (Id. ¶ 8). Further, Defendant is not registered to do business in New Jersey and "solicits no business there." (ECF No. 25 at 18). Thus, since Defendant itself did not make the calls in question to Plaintiff, and Plaintiff fails to allege other ways in which Defendant purposefully availed itself of the forum, the Court does not have specific jurisdiction over Defendant. *See J. McIntyre Mach, Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011). Instead, the Court must consider if an agency relationship exists between Defendant and the Resort Sales Companies.

 **\*5** The Court finds that the Resort Sales Companies are not agents of Defendant for jurisdictional purposes and, moreover, even if they were, Plaintiff has failed to allege that the Resort Sales Companies made the unsolicited phone calls in question thus invalidating any agency argument. "To determine if a subsidiary is acting as an agent of the parent, courts consider (1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; (2) whether there is common ownership of the parent and subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies." *Edelson V., L.P. v. Encore Networks, Inc.*, 2012 WL 4891696, \*3 (D.N.J. Oct. 12, 2012) (quoting *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008)).

Plaintiff claims the first requirement of agency is met because the Resort Sales Companies solicited business in New Jersey on behalf of Defendant, who would otherwise have had to solicit such business itself. (ECF No. 29 at 14). The record shows that the absence of the Resort Sales Companies does not necessarily mean that Defendant performed the call itself since it could turn to independent contractors—and in fact has already done so in part. Additionally, Defendant is a real estate company but Plaintiff does not allege that said subsidiaries are authorized to make real estate transactions on Defendant's behalf. "Therefore, 'because it cannot be said that [the subsidiary] can do all of the business [the parent] could do were its own officials present in [New Jersey], an agency relationship did not exist." *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 610 (D.N.J. 2004) (internal quotations omitted). As for the second factor, common ownership of the parent and subsidiary, Defendant concedes that the Resort Sales Companies are "wholly-owned subsidiaries of Spinnaker." (ECF No. 31 at 10). However, "forum contacts of a subsidiary corporation will not be imputed to a parent corporation without a showing of something more than mere ownership." *Leo v. Kerr-McGee*, 1996 WL 254054, \*5 (D.N.J. May 10, 1996) (quoting *Pfundstein v. Omnicom Group, Inc.*, 285 N.J. Super. 245, 252 (App. Div. 1995)). Thus, common ownership of Defendant and the Resort Sales Companies alone is not dispositive.

The third factor, financial dependency, is also not met here. A subsidiary is dependent if it "needs financial support from its parent on a regular basis or for expenses other than the strategic acquisitions of other corporations." *Quality Int'l Packaging, LTD. v. Chamilia, Inc.*, 2015 WL 4749156, \*6 (D.N.J. Aug. 5, 2015). However, Defendant points out that the Resort Sales Companies each have separate and various bank accounts (ECF No. 31 at 12; ECF No. 25-2 Declaration of Steven F. Gooby ("Gooby Decl."), Exs. 7, 13), and credit card merchant accounts, which shows that the Resort Sales Companies receive revenue from sources other than just Defendant. (Gooby Decl., Exs. 8, 14). Thus, the Court is not persuaded that the Resort Sales Companies are financially dependent on Defendant.

Finally, the Court must determine "whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies." *Edelson*, 2012 WL

4891696 at *3. Plaintiff first asserts that Defendnat exerts control through its shared corporate officers with its subsidiaries. [5] However, as noted above, the existence of common officers between a parent and a subsidiary does not establish control. *Leo*, 1996 WL 254054 at *5. Plaintiff also argues that Spinnaker controls the Resort Sales Companies because it extended its contract with Southwind Management Corporation to provide payroll and human resources to cover the Resort Sales Companies thereby making personnel and operational decisions on their behalf. (ECF No. 29 at 22). However, this connection is tenuous at best and merely shows that the Resort Sales Companies and Spinnaker utilize the same third-party company for certain services. It does not prove that Defendant "controls the subsidiary's marketing and operational policies." *Edelson*, 2012 WL 4891696 at *3.

**\*6** The Court is not satisfied with Plaintiff's argument that agency exists between the Resort Sales Companies and Defendant and thus will not impute the former's contacts with New Jersey to the latter. Even if Plaintiff had satisfactorily established agency, Plaintiff fails to allege that the Resort Sales Companies made the unsolicited telephone calls that gave rise to this action. The Complaint clearly attributes the telephone calls to Defendant, not to its subsidiaries and Plaintiff has not attempted to amend it. (Compl. 1 ¶¶ 2, 13, 15, 31, 32). Furthermore, during jurisdictional discovery, after Plaintiff subpoenaed the Resort Sales Companies (Gooby Decl., Exs. 5, 11),

both Resort Sales Companies denied making the calls in question to Plaintiff. (Gooby Decl., Ex. 12 at Nos. 6-10; Gooby Decl. Ex. 6 at Nos. 6-10). Defendant contends that these responses demonstrate that any telemarketing calls to Plaintiff must have come from independent telemarketing companies, not its subsidiaries. The Court finds that Plaintiff has failed to show that the Resort Sales Companies made the alleged phone calls. Since Plaintiff's argument for specific personal jurisdiction is based on the premise that the Resort Sales Companies made telephone calls to Plaintiff and other class members, Plaintiff's failure to show that the Resort Sales Companies made such calls defeats its jurisdictional argument. Accordingly, even if the Resort Sales Companies are agents of Defendant, the Court cannot have specific personal jurisdiction over Defendant without the requisite minimum contacts with the forum.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's Motion to Dismiss the Complaint is hereby granted. An appropriate Order accompanies this Opinion.

**All Citations**

Slip Copy, 2017 WL 3315285

Footnotes

1   This background is derived from Plaintiff's Complaint (ECF No. 1), which the Court must accept as true at this stage of the proceedings. *See Alston v. Countiywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

2   Plaintiff alleges that the following numbers have been identified as calling from Spinnaker: 908-206-8623; 908-222-8013; 908-222-7407; 908-213-1884; 908-206-1351; and 908-213-0955. (Id. ¶ 20).

3   Cardenas brings this action on behalf of two proposed classes:

   **No Consent-DNC Class**: All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days, (2) who thereafter received more than one telephone call made by or on behalf of Defendant Continuum [sic] within a 12-month period starting February 12, 2012 to present, and (3) for whom Defendant obtained prior express consent to call in the same manner as Defendant claims it obtained consent to call on the Plaintiff.

   **Stop Calling Class**: All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days; (2) who received more than one telephone call made by or on behalf of Defendant within a 12-month period from April 21, 2012 to present; (3) who requested that Defendant not call them again; (4) and who received at least one additional call from Defendant at least thirty days after the request to stop calling. (Compl. ¶ 33).

4   The *Goodyear* Court also specified that while the "[f]low of a manufacturer's products into a forum ... may bolster an affiliation germane to *specific* jurisdiction ... ties serving to bolster the exercise of specific jurisdiction do not warrant a

determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Id.* at 2855 (emphases in original).

5    Plaintiff also asserts both Defendnat and the Resort Sales Companies have the same Executive Director of Sales and Marketing, Shawn Oliver, despite Spinnaker's assertions to the contrary (ECF No. 29 at 20). Plaintiff relies on a caption from Spinnaker's website proclaiming Oliver to be said Director of Defendant. Defendant responds that the caption was in error and the subpoenaed payroll records clearly show that Oliver works for Resort Sales by Spinnaker not for Defendant. (ECF No. 31 at 14). Since this argument is really just an elaboration of Plaintiff's assertion that the Resort Sales Companies and Defendant have common ownership, the Court need not address it further.

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit C

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HENNA CARDENAS, *individually and on behalf of a putative class*,<br><br>        Plaintiffs,<br><br>v.<br><br>SPINNAKER RESORTS, INC.,<br><br>        Defendant. | Civil Action No.: 16-2466 (JLL)<br><br>**ORDER** |

This matter comes before the Court by way of Defendant Spinnaker Resorts, Inc.'s Motion to Dismiss the Plaintiff's Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. (ECF No. 25). For the reasons set forth in the Court's corresponding Opinion,

IT IS on this 3rd day of August, 2017

**ORDERED** that Defendant Spinnaker Resorts, Inc.'s Motion to Dismiss (ECF No. 25) is hereby GRANTED; and it is further

**ORDERED** that Plaintiff's Complaint (ECF No. 1) is hereby dismissed; and it is further

**ORDERED** that the Clerk of the Court shall mark this matter closed.

JOSE L. LINARES
Chief Judge, United States District Court

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Henna Cardenas, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 9:18-761-BHH |
| v. | ) ) | **<u>ORDER</u>** |
| Spinnaker Resorts, Inc., a Florida corporation, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

    This matter is before the Court upon Defendant Spinnaker Resorts, Inc.'s ("Spinnaker" or "Defendant") motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Henna Cardenas ("Cardenas" or "Plaintiff") filed a response in opposition; Defendant filed a reply; and the matter is ripe for review. For the reasons set forth below, the Court grants Defendant's motion.

## <u>BACKGROUND</u>

    Plaintiff is a resident of Warren County, New Jersey, and she brings this purported class action against Defendant Spinnaker alleging that it violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"), by making unsolicited telephone calls to individuals registered on the national Do Not Call registry. According to Plaintiff's complaint, Defendant is a Florida corporation with its headquarters in Hilton Head, South Carolina, "that develops and aggressively markets timeshares in South Carolina, Missouri, and Florida." (ECF No. 1 ¶¶ 1, 7.) Plaintiff alleges that "within a single year, Defendant

made multiple unsolicited promotional telephone calls to the landline telephones of Plaintiff and thousands of other members of the putative Class who are registered on the do not call registry." (*Id.* ¶ 2.) Plaintiff further alleges that "Defendant purchases lists of consumers to call without receiving their consent" and that "Spinnaker has turned to unsolicited telemarketing as a way to increase its customer base as it seeks to generate sales for its vacation business." (*Id.* ¶¶ 10, 11.) According to Plaintiff, "Defendant and/or their agent places repeated and unwanted calls to consumers whose phone numbers are registered with the National Do Not Call Registry," and "Defendant and/or their agents are not processing requests made by the called persons to not be called once they have been called." (*Id.* ¶ 13.) Plaintiff asserts that "Defendant knowingly made (and continues to make) unsolicited telemarketing calls without the prior express consent of the call recipients and knowingly continued to call them after requests to stop." (*Id.* ¶ 15.) In all, Plaintiff alleges four causes of action for violation of the TCPA on behalf of herself and two classes of individuals.[1] (*See generally id.*)

---

[1] Plaintiff's complaint defines the following two classes:

**No Consent-DNC Class**: All persons in the United States from four years prior to the filing of this action through the present (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days, (2) who thereafter received more than one telephone call made by or on behalf of Defendant within a 12-month period, (3) for whom Defendant obtained prior express consent to call in the same manner as Defendant claims it obtained consent to call the Plaintiff, (4) where the equipment used to make the calls was the same equipment used to call the Plaintiff.

**DNC Stop Calling Class**: All persons in the United States from four years prior to the filing of this action through the present (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days; (2) who received more than one telephone call made by or on behalf of Defendant within a 12-month period; and (3) who requested that Defendant not call them again, (4) and who received at least one additional call from Defendant at least thirty days after requesting that Defendant not call them again.

(ECF No. 1 at 11.)

Prior to filing this action, Plaintiff filed a nearly identical action against Defendant in the United States District Court for the District of New Jersey. *See* ECF No. 18-2; *Cardenas v. Spinnaker Resorts, Inc.*, No. 2:16-cv-2466-JLL-JAD (D.N.J. May 2, 2016). In the New Jersey action, Defendant filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. After giving the parties time to conduct jurisdictional discovery, the New Jersey court entered an order on August 3, 2017, granting Defendant's motion and finding that the Court lacked personal jurisdiction over Defendant. *Cardenas*, No. 16-2466, 2017 WL 3315285 (D.N.J. Aug. 3, 2017).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Supreme Court held in *Bell Atl. Corp. v. Twombly*, the pleading standard set forth in Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of a plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The "complaint must contain sufficient factual matter, accepted

3

as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when the factual content

allows the court to reasonably infer that the defendant is liable for the misconduct alleged.

*Id.*  When considering a motion to dismiss, the court must accept as true all of the factual

allegations contained in the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Rule 201 of the Federal Rules of Evidence provides that a court shall take judicial

notice of adjudicative facts when requested by a party and supplied with the necessary

information and when the judicially noticed fact is "capable of accurate and ready

determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.

R. Evid. 201.  "Facts subject to judicial notice may be considered by a court on a motion

to dismiss." *Briggs v. Newberry County School Dist.*, 838 F. Supp. 232, 234 (D.S.C. 1992).

When considering a motion to dismiss based on the doctrine of res judicata, a court may

take judicial notice of facts from a prior judicial proceeding.  *Id.* (citing *Mehlar Corp. v. City

of St. Louis, Missouri*, 530 F. Supp. 85 (E.D. Mo.1981) (dismissing an action on a Rule

12(b)(6) motion on the basis of res judicata)).[2]

## DISCUSSION

Defendant seeks dismissal of Plaintiff's complaint based on the New Jersey court's

factual findings in Plaintiff's previous suit filed in the District of New Jersey.  Specifically,

Defendant asserts that, in granting Defendant's motion to dismiss based on lack of

---

[2] Here, the record of prior proceedings in the prior case Plaintiff filed in the District of New Jersey is a source whose accuracy cannot reasonably be questioned.  Accordingly, the Court takes judicial notice of the prior proceedings between the parties in *Cardenas v. Spinnaker Resorts, Inc.*, No. 2:16-cv-2466-JLL-JAD, and considers those proceedings in ruling on Defendant's motion to dismiss.

personal jurisdiction, the New Jersey court made a factual finding that Defendant never made telemarketing calls to Plaintiff, and Defendant asserts that the doctrine of issue preclusion bars Plaintiff from relitigating that factual issue in this case.

Plaintiff opposes Defendant's motion and asserts that the New Jersey court's adjudication of agency *for jurisdictional purposes* differs from the question before this Court–i.e., whether Defendant may be held liable for calls allegedly made by its agents–such that the issue that Defendant now asserts is precluded is not identical to the issue previously litigated. Plaintiff also asserts that because the New Jersey court never reached a decision on the merits of the alleged TCPA violations, the issue that Defendant now asserts is precluded was not actually determined and was not essential to the New Jersey court's decision. Finally, Plaintiff contends that she has not been given a fair opportunity to litigate the issue.

The doctrine of res judicata embodies two distinct preclusion concepts: (1) claim preclusion; and (2) issue preclusion (or collateral estoppel). *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 376 n. 1 (1985); *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1 (1984). While claim preclusion refers to the preclusive effect of a judgment in foreclosing litigation of matters that should have been raised in an earlier suit, issue preclusion refers to the effect of a judgment in precluding the relitigation of particular matters that were actually litigated and decided. *Briggs v. Newberry County School District*, 838 F. Supp. 232 (D.S.C.1992). "Issue preclusion is more narrowly drawn and . . . operates to bar subsequent litigation of those legal and factual issues common to both actions that were 'actually and necessarily determined by a court of competent jurisdiction in the first litigation.'" *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318

5

(4th Cir. 2002).    The Fourth Circuit has stated the following with respect to collateral

estoppel:

> Collateral estoppel, or issue preclusion, bars subsequent litigation of legal
> and factual issues common to an earlier action that were "actually and
> necessarily determined" in the first litigation. *Montana v. United States*, 440
> U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); Combs v. *Richardson*,
> 838 F.2d 112, 114 (4th Cir. 1988).    Thus, "[c]ollateral estoppel forecloses the
> relitigation of issues of fact or law that are identical to issues which have
> been actually determined and necessarily decided in prior litigation in which
> the party against whom [collateral estoppel] is asserted had a full and fair
> opportunity to litigate." *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219,
> 224 (4th Cir. 1998) (internal quotation marks omitted).    To apply collateral
> estoppel or issue preclusion to an issue or fact, the proponent must
> demonstrate that (1) the issue or fact is identical to the one previously
> litigated; (2) the issue or fact was actually resolved in the prior proceeding;
> (3) the issue or fact was critical and necessary to the judgment in the prior
> proceeding; (4) the judgment in the prior proceeding is final and valid; and (5)
> the party to be foreclosed by the prior resolution of the issue or fact had a full
> and fair opportunity to litigate the issue or fact in the prior proceeding.

*Malm v. Gonzales*, 151 F. App'x 252, 256 (4th Cir. 2005).

In the New Jersey action, the parties agreed that the court did not have general

personal jurisdiction over Defendant and/or its subsidiaries.    In considering whether specific

personal jurisdiction existed, the court found that "since Defendant itself did not make the

calls in question to Plaintiff, and Plaintiff fails to allege other ways in which Defendant

purposely availed itself of the forum, the Court does not have specific jurisdiction over

Defendant."    *Cardenas*, 2017 WL 3315285, *4.    The court continued its analysis by

considering whether an agency relationship existed between Defendant and its subsidiary

corporations, Resort Sales Missouri, Inc., or Resort Sales by Spinnaker, Inc.–what the

court termed "the Resort Sales Companies."    *Id.*    Ultimately, the court found "that the

Resort Sales Companies are not agents of Defendant for jurisdictional purposes and,

moreover, even if they were, *Plaintiff has failed to allege that the Resort Sales Companies*

6

*made the unsolicited phone calls in question* thus invalidating any agency argument." *Id.* at

*5 (emphasis added).  The court further explained:

> The Court is not satisfied with Plaintiff's argument that agency exists between the Resort Sales Companies and Defendant and thus will not impute the former's contacts with New Jersey to the latter.  Even if Plaintiff had satisfactorily established agency, Plaintiff fails to allege that the Resort Sales Companies made the unsolicited telephone calls that gave rise to this action. The Complaint clearly attributes the telephone calls to Defendant, not to its subsidiaries and Plaintiff has not attempted to amend it. (Compl. 1 ¶¶ 2, 13, 15, 31, 32.) . . . The Court finds that Plaintiff has failed to show that the Resort Sales Companies made the alleged phone calls. . . .

*Id.* at *6.

As an initial matter, the Court notes that Plaintiff's allegations against Defendant in

this action are virtually identical to her allegations against Defendant in the New Jersey

action.  Only on two occasions in both complaints does Plaintiff refer to acts allegedly taken

by agents of Defendant.  Specifically, in paragraph 13 of the instant complaint, Plaintiff

states: "Defendant and/or their agent places repeated and unwanted calls to consumers

whose phone numbers are registered with the National Do Not Call Registry. . . .

Furthermore, Defendant and/or their agents are not processing requests made by the

called persons not to be called once they have been called."[3]  (ECF No. 1 at 5.)  In her

prayer for relief, she also asks for an injunction requiring Defendant and its agents to cease

all unsolicited telephone activities.  (*Id.* at 18; *cf. ECF* No. 18-2 at 16.)  Otherwise, all

references in Plaintiff's complaint are to actions taken by Defendant.  (*See generally* ECF

No. 1; *cf.* ECF No. 1 and ECF No. 18-2.)

---

[3] Paragraph 13 of the New Jersey complaint states: Defendant and/or their agent places repeated and unwanted calls to consumers whose phone numbers are registered with the National Do Not Call Registry. . . . Furthermore, Defendant and/or its agents does not process users' requests to not be called once they have been called."  (ECF No. 18-2 at 5.)

Plaintiff argues in response to Defendant's motion to dismiss that the New Jersey court's findings on the issue of agency for jurisdictional purposes should not preclude this action because this action presents the question of whether Defendant can be held liable for calls made on its behalf by its agents, which Plaintiff asserts is a question that the New Jersey court did not answer. (ECF No. 19 at 10.) While Plaintiff is correct that the New Jersey court dismissed Plaintiff's complaint after conducting a jurisdictional analysis, what Plaintiff's argument overlooks is that, in conducting its jurisdictional analysis, the New Jersey court also determined facts relevant to this Court's inquiry. Specifically, the New Jersey court determined that "Defendant itself did not make the calls in question to Plaintiff." *Cardenas*, 2017 WL 3315285, *4. In apparent recognition of this finding, Plaintiff states in her memorandum in opposition to Defendant's motion to dismiss:

> Plaintiff's theory isn't that Spinnaker itself made the calls directly–it alleges that Defendant *or its agents* made such calls and seeks relief against Defendant and its agents. (Compl. ¶¶ 13-14, Prayer for Relief ¶ 3.) Hence, the fact that the New Jersey court found that Spinnaker didn't make the calls is irrelevant as the fact that Spinnaker did not make the calls directly is not contested; rather, the question is whether the New Jersey court adjudicated Spinnaker's susceptibility to being held liable for calls made by its agents.

(ECF No. 19 at 11 (emphasis in original).)

Importantly, as previously set forth, the allegations of Plaintiff's complaint in this action are virtually identical to the allegations of her complaint in the New Jersey action. When faced with virtually identical allegations, the New Jersey court found that "[t]he Complaint clearly attributes the telephone calls to Defendant, not to its subsidiaries . . . ." *Cardenas*, 2018 WL 3315285, *6. In addition, the court found that "Plaintiff has failed to allege that the Resort Sales Companies made the unsolicited phone calls in question," even if they were agents of Defendant for jurisdictional purposes. *Id.* After review, the

8

Court agrees with Defendant that these findings by the New Jersey court entitle Defendant to dismissal of Plaintiff's complaint in this action, at least as it currently stands.

Stated plainly, the Court finds that Plaintiff is precluded from alleging that Defendant itself made phone calls to her based on the New Jersey court's findings–and Plaintiff apparently concedes as much. (*See* ECF No. 19 at 11.)  In addition, the Court also finds that Plaintiff is precluded from alleging that the Resort Sales Companies identified in the New Jersey court's order made the alleged phone calls to her based on the New Jersey court's findings (1) "that Plaintiff has failed to allege that the Resort Sales Companies made the unsolicited phone calls in question" and (2) "that Plaintiff failed to show that the Resort Sales Companies made the alleged phone calls."  *Cardenas*, 2017 WL 3315285, *5-*6. The New Jersey court squarely decided the fact of whether Defendant and the Resort Sales Companies made phone calls to Plaintiff, and this fact was crucial to the New Jersey court's decision.  Although this Court is not tasked with a jurisdictional inquiry, the fact of whether Defendant and the Resort Sales Companies made phone calls to Plaintiff is an issue common to both actions.  The New Jersey court's order is final and valid, and Plaintiff had a full and fair opportunity to litigate that fact in the prior proceeding.  *See Malm*, 151 F. App'x at 256.  Accordingly, the Court agrees with Defendant that Plaintiff is not entitled to a second bite of the apple and is precluded from asserting that Defendant itself made the alleged calls or that the Resort Sales Companies made the alleged calls.

Nevertheless, the Court recognizes that Plaintiff's complaint does not specifically refer to the Resort Sales Companies as the particular "agents" of Defendant that made the alleged phone calls; rather, Plaintiff's complaint simply refers on two occasions to unidentified "agents" of Defendant.  While these allegations are insufficient as they stand

to state a plausible claim for relief, to the extent Plaintiff can more specifically identify other agents of Defendant (not including the Resort Sales Companies), she may be able to state a claim or claims different from the ones before the New Jersey court, and more importantly, a claim or claims that would not be precluded by the New Jersey court's factual findings.  Accordingly, the Court grants Defendant's motion to dismiss for the reasons set forth herein; however, the Court does so without prejudice.[4]

<u>**CONCLUSION**</u>

Based on the foregoing, the Court grants Defendant's motion to dismiss (ECF No. 18) and dismisses Plaintiff's complaint without prejudice.

**AND IT IS SO ORDERED.**

/s/Bruce H. Hendricks
The Honorable Bruce Howe Hendricks
United States District Judge

March 4, 2019
Charleston, South Carolina

---

[4] Defendant asserts that any dismissal should be with prejudice because amendment would be futile. However, because the Court does not know whether other entities exist that could have made the alleged phone calls on behalf of Defendant or as agents of Defendant, the Court cannot determine at this time whether amendment would be futile.  Accordingly, the Court declines to dismiss this action with prejudice.

10

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

Henna Cardenas, individually and on        )
behalf of all others similarly situated,   )
                                           )
                    Plaintiff,             )
                                           )        Civil Action No. 9:18-761-BHH
v.                                         )
                                           )        **<u>ORDER</u>**
Spinnaker Resorts, Inc., a Florida         )
Corporation,                               )
                                           )
                    Defendant.             )
_____)

        This matter is before the Court upon Plaintiff's motion pursuant to Rule 59(e) of the

Federal Rules of Civil Procedure to reconsider the Court's order granting Defendant's

motion to dismiss without prejudice.  In her motion, Plaintiff does not challenge the Court's

conclusion that she is precluded from asserting that Defendant Spinnaker Resorts, Inc., a

Florida Corporation, made alleged telemarketing calls in violation of the Telephone

Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, 47 C.F.R. § 64.1200 ("TCPA").

However, Plaintiff does challenge the Court's conclusion that Plaintiff is precluded from

alleging that the Resort Sales Companies made the calls, and Plaintiff requests the

opportunity to amend her complaint and substitute the Resort Sales Companies as

Defendants.  Defendant opposes Plaintiff's motion and asserts that she is not entitled to

relief pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

<u>**DISCUSSION**</u>

        Reconsideration of a judgment pursuant to Rule 59(e) is an extraordinary remedy

that should be used sparingly.  *See Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396,

403 (4th Cir.1998); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008). Ordinarily, a court may grant a motion to alter or amend pursuant to Rule 59(e) for only three reasons: (1) to comply with an intervening change in controlling law; (2) to account for new evidence not available previously; or (3) to correct a clear error of law or prevent manifest injustice. *Pac. Ins. Co.*, 148 F.3d at 403.

Here, Plaintiff does not point to any change in controlling law or new evidence not previously available.[1] Thus, to be entitled to relief, the Court must find that Plaintiff has shown that relief is warranted to correct a clear error of law or to prevent manifest injustice.

In its March 2019 order, the Court found as follows:

> Stated plainly, the Court finds that Plaintiff is precluded from alleging that Defendant itself made phone calls to her based on the New Jersey court's findings–and Plaintiff apparently concedes as much. (*See* ECF No. 19 at 11.) In addition, the Court also finds that Plaintiff is precluded from alleging that the Resort Sales Companies identified in the New Jersey court's order made the alleged phone calls to her based on the New Jersey court's findings (1) "that Plaintiff has failed to allege that the Resort Sales Companies made the unsolicited phone calls in question" and (2) "that Plaintiff failed to show that the Resort Sales Companies made the alleged phone calls." *Cardenas*, 2017 WL 3315285, *5-*6. The New Jersey court squarely decided the fact of whether Defendant and the Resort Sales Companies made phone calls to Plaintiff, and this fact was crucial to the New Jersey court's decision. Although this Court is not tasked with a jurisdictional inquiry, the fact of whether Defendant and the Resort Sales Companies made phone calls to Plaintiff is an issue common to both actions. The New Jersey court's order is final and valid, and Plaintiff had a full and fair opportunity to litigate that fact in the prior proceeding. *See Malm*, 151 F. App'x at 256. Accordingly, the Court agrees with Defendant that Plaintiff is not entitled to a second bite of the apple and is precluded from asserting that Defendant itself made the alleged calls or that the Resort Sales Companies made the alleged calls.

---

[1] Although Plaintiff points to additional calls received in June and July of 2017, which were not raised in the prior New Jersey action or in the complaint in this action, Plaintiff knew about these calls prior to the dismissal of the New Jersey action, prior to filing this action, and prior to this Court's March 2019 order dismissing this action. Thus, the Court agrees with Defendant that these calls do not constitute "new evidence not previously available."

> Nevertheless, the Court recognizes that Plaintiff's complaint does not
> specifically refer to the Resort Sales Companies as the particular "agents" of
> Defendant that made the alleged phone calls; rather, Plaintiff's complaint
> simply refers on two occasions to unidentified "agents" of Defendant.  While
> these allegations are insufficient as they stand to state a plausible claim for
> relief, to the extent Plaintiff can more specifically identify other agents of
> Defendant (not including the Resort Sales Companies), she may be able to
> state a claim or claims different from the ones before the New Jersey court,
> and more importantly, a claim or claims that would not be precluded by the
> New Jersey court's factual findings.    Accordingly, the Court grants
> Defendant's motion to dismiss for the reasons set forth herein; however, the
> Court does so without prejudice.

(ECF No. 21 at 9-10.)

After review, the Court finds that Plaintiff is entitled to limited relief insofar as a few

points of clarification are in order.  Specifically, in stating that "Plaintiff is precluded from

alleging that the Resort Sales Companies identified in the New Jersey court's order made

the alleged phone calls to her based on the New Jersey court's findings," the Court should

have been more specific and instead should have stated: "Plaintiff is precluded from

alleging that *Defendant Spinnaker Resorts, Inc. is directly or vicariously liable for the*

*alleged phone calls made by the Resort Sales Companies* based on the New Jersey court's

findings."  As the New Jersey court explained, Plaintiff's complaint in the New Jersey action

(and Plaintiff's complaint in this action) did not sufficiently allege that the Resort Sales

Companies made the calls at issue.  Because Plaintiff's allegations against Defendant

Spinnaker Resorts, Inc. were virtually identical in both actions, the Court again finds that

Plaintiff's complaint in this action fails to state a claim *against Defendant Spinnaker*

*Resorts, Inc.* for the calls allegedly made by the Resort Sales Companies.  Moreover, as

the New Jersey court determined, Plaintiff failed to show that the Resort Sales Companies

actually made the calls on behalf of Defendant Spinnaker Resorts, and the Court again

finds that this factual finding precludes Plaintiff from now alleging that *Defendant Spinnaker Resorts, Inc.* is liable for the calls allegedly made by the Resort Sales Companies.

Likewise, in stating that Plaintiff "is precluded from asserting that Defendant itself made the alleged calls *or that the Resort Sales Companies made the alleged calls*," the Court again should have been more specific and instead should have stated that Plaintiff "is precluded from asserting that Defendant itself made the alleged calls *or that Defendant Spinnaker Resorts, Inc. is liable for alleged calls made by the Resort Sales Companies.*"

Lastly, when the Court indicated that Plaintiff may be able to state a plausible claim by "more specifically identify[ing] other agents of Defendant (not including the Resort Sales Companies)," the Court was referring to Plaintiff's potential ability to state a plausible claim *against Defendant Spinnaker Resorts*, *Inc.* and not to Plaintiff's potential ability to state a plausible claim directly against the Resort Sales Companies, as there were no direct claims made against the Resort Sales Companies in this action.  In other words, although the Court now clarifies its prior order to reflect that its findings refer to Plaintiff's ability to sue *Defendant Spinnaker Resorts, Inc.*, because the Resort Sales companies (along with any other potential unidentified third-party actors) were not parties to the New Jersey action or this action, the Court's March 2019 findings should not be construed to preclude Plaintiff from pursuing relief against such entities.  Moreover, although Plaintiff now seeks to amend her complaint in this action to substitute the Resorts Sales Companies as Defendants in place of Defendant Spinnaker Resorts, Inc., Plaintiff cites no authority to support this request, and the Court ultimately declines Plaintiff's request, as the Court believes it would be unfair to permit Plaintiff to amend this action at this time to present entirely new legal

4

theories regarding the potential direct or vicarious liability of the Resorts Sales Companies (or others), who have never been parties to this action (or to the New Jersey action, for that matter). Rather, if Plaintiff wishes to pursue these new claims against new parties, then she may file a new action doing so.

Based on the foregoing, the Court hereby grants in part Plaintiff's Rule 59(e) motion as outlined above to clarify that its March 2019 findings refer only to Plaintiff's ability to proceed with the claims that she previously raised against *Defendant Resort Sales, Inc.*, which was the only Defendant named in either the New Jersey action or this action. The Court further clarifies that its March 2019 findings do not control Plaintiff's ability to pursue any potential claims against the Resort Sales Companies, either directly for their actions or vicariously for the actions of some other unidentified third party or parties, as neither the New Jersey court nor this Court specifically addressed the direct or vicarious liability of the Resort Sales Companies (or others), which were not parties to either action. In addition, the Court again notes that its March 2019 findings do not address the potential liability of Defendant Resort Sales, Inc. with respect to any other unidentified agents or entities (other than the Resort Sales Companies) or with respect to any calls other than those specifically alleged in the complaints in the New Jersey action and this action.

## CONCLUSION

It is hereby ordered that Plaintiff's Rule 59(e) motion (ECF No. 23) is granted insofar as the Court clarifies certain aspects of its March 2019 order as outlined above, and the motion is denied insofar as the Court denies Plaintiff's request to amend her complaint to assert new claims against new Defendants. This action remains closed, and to the extent Plaintiff wishes to pursue any potential claims not addressed by the Court's March 2019

5

order, she may do so by filing a new action.

**AND IT IS SO ORDERED.**

/s/Bruce H. Hendricks
The Honorable Bruce Howe Hendricks
United States District Judge

July 3, 2019
Charleston, South Carolina