IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOE MICELI,

    Plaintiff,

v.                                                          No. 20-cv-1231 SMV/SCY

SOUTHWIND MANAGEMENT CORP.,
SPINNAKER RESORTS INC., and JANE DOES 1–10,

    Defendants.[1]

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on two related motions. The first is Defendant's[2] Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction [Doc. 15], filed on January 8, 2021. Plaintiff responded on January 15, 2021. [Doc. 21]. Defendant replied on January 29, 2021. [Doc. 22]. The second motion is Plaintiff's Motion for Jurisdictional Discovery [Doc. 27], filed on February 12, 2021. Defendant responded on February 26, 2021. [Doc. 30]. Plaintiff replied on March 8, 2021. [Doc. 32]. The Court heard oral argument on each motion. *See* [Docs. 31, 35] (clerk's minutes). The parties consented to my presiding over this matter and entering final judgment. [Doc. 20]. The Court has considered the briefing, the oral argument, the relevant portions of the record, and the relevant law. Being otherwise fully advised in the premises,

---

[1] Defendant Spinnaker Resorts, Inc. has indicated that Defendant Southwind Management Corporation no longer exists as an entity because it was merged into Spinnaker Resorts, Inc. on January 1, 2020. [Doc. 15] at 2. With the disclosure of this information, Plaintiff has agreed to dismiss Defendant Southwind Management Corporation from the case. [Doc. 21] at 1. However, at this time, no action has been taken to dismiss Southwind Management Corporation from this action.

[2] Because Plaintiff has indicated that he intends to dismiss his claims against Defendant Southwind Management Corporation, *see supra* footnote 1, this Memorandum Opinion and Order refers only to Defendant Spinnaker Resorts, Inc. as "Defendant" for simplicity.

the Court will deny without prejudice Defendant's Motion to Dismiss [Doc. 15] and grant Plaintiff's Motion for Jurisdictional Discovery [Doc. 27]. Plaintiff has alleged and provided sufficient evidence to show that a factual dispute exists as to whether Defendant maintains an agency relationship with any Jane Doe Defendant connected to the alleged robocalls. Therefore, the Court will allow jurisdictional discovery on the agency issue that is intertwined with the personal-jurisdiction issue.

## BACKGROUND

Plaintiff's Complaint alleges violations of the Telephone Consumer Protection Act ("TCPA"), violations of the New Mexico Unfair Practices Act ("NMUPA"), trespass to chattels, and civil conspiracy to direct an illegal telemarketing campaign. [Doc. 1-1] at 13–16. In support of his claims, Plaintiff alleges that, despite being on the National Do-Not-Call Registry ("Registry"), he received numerous telemarketing robocalls, in violation of the TCPA and the NMUPA. *Id.* at 1–2, 6–8. The illegal robocalls ultimately led to a call from real persons who charged his credit card and sent him a confirmation letter, from spinnakerresorts.com, for a vacation package with "Spinnaker Resorts." *Id.* at 6–9, 21. Plaintiff alleges that the calls were made by Defendant's agents, on behalf of Defendant, and that Defendant is therefore liable for the illegal calls. *Id.* at 10–12. However, Defendant claims this Court has no personal jurisdiction over it because it did not make, had no control over, and was not responsible for, the alleged illegal calls to Plaintiff. *See generally* [Doc. 15].

Plaintiff maintains that personal jurisdiction exists over Defendant on a theory of agency; that is, that Defendant's subsidiaries acted as its agents in making or outsourcing the calls. [Doc. 1-1] at 4. In its briefing, Defendant controverted Plaintiff's factual allegations with multiple

affidavits from Mr. Basil Matthews, Comptroller for Defendant. [Doc. 15] at 15; [Doc. 22] at 12; [Doc. 30] at 10. Mr. Matthews testified that Defendant did not hire telemarketers, charge Plaintiff's credit card, or send him any communications regarding the vacation package that he purchased. [Doc. 15] at 17–18; [Doc. 22] at 12–13. Plaintiff responded to Mr. Matthews's first affidavit with an affidavit of his own, attesting to his personal knowledge that his phone number is on the Registry, that the calls were robocalls, that the callers presented themselves as representing "Spinnaker Resorts," and that Defendant controls the website from which Plaintiff received confirmation of his purchase. *See* [Doc. 21-1] at 2–3. Plaintiff contends that he has shown sufficient evidence to connect Defendant to the alleged illegal calls and thus established personal jurisdiction; i.e., the phone number of the merchant who charged his credit card is a customer service phone number controlled by Defendant; Defendant is "one of the Spinnaker companies" listed in the confirmation letter; and the website's privacy policy lists Defendant as the operating entity. [Doc. 1-1] at 8, 22; [Doc. 21-1] at 4–5.

## LEGAL STANDARD

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Thus, a court may "exercise personal jurisdiction over an out-of-state defendant who has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe*, 326 U.S. at 316).

A.    **Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)**

When faced with a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over an out-of-state defendant. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). The plaintiff's burden is light in the early stages of litigation before discovery. *Id.* For example, where there is no evidentiary hearing and the jurisdictional question is decided on the parties' affidavits and written materials, the plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* The court accepts as true all well-pleaded facts (that are plausible, non-conclusory, and non-speculative) alleged by the plaintiff unless the defendant controverts those facts by affidavit. *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011). If the defendant controverts facts in the complaint, the plaintiff may make the required showing by coming forward with facts, via affidavit or other written materials, that would support jurisdiction. *See id.* The court resolves factual disputes in the parties' affidavits in the plaintiff's favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

B.    **Specific Personal Jurisdiction[3]**

For a court "to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017) (cleaned up). "[T]here must be an affiliation between the forum and the underlying controversy[.]" *Id.* (cleaned up). Specific jurisdiction thus "is confined to adjudication

---

[3] Two categories of personal jurisdiction have developed from *International Shoe*'s conception of "fair play and substantial justice," general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). In this case, the parties agree that the Court does not have general jurisdiction over Defendant; therefore, this Court need focus its inquiry only on specific jurisdiction. [Doc. 21] at 2; [Doc. 22] at 2.

of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (citation omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). New Mexico's longarm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Tercero v. Roman Catholic Diocese*, 2002-NMSC-018, ¶ 6, 132 N.M. 312. Thus, to determine whether this Court may exercise personal jurisdiction over Defendant, the relevant inquiry is whether that exercise of jurisdiction "comports with the limits imposed by federal due process." *Daimler*, 571 U.S. at 125. The Tenth Circuit has framed the "minimum contacts" test in the context of specific jurisdiction as "encompass[ing] two distinct requirements: 'first, that the out-of-state defendant must have purposefully directed its activities at residents of the forum state, and second, that the plaintiff's injuries must arise out of defendant's forum-related activities.'" *Shrader*, 633 F.3d at 1239 (quoting *Dudnikov*, 514 F.3d at 1071).

**C.     Personal Jurisdiction over Parent Corporation if Subsidiary Acts as Agent**

"Generally, personal jurisdiction over a subsidiary corporation does not give personal jurisdiction over the parent corporation, even if the parent wholly owns the subsidiary." *Romero v. TitleMax of N.M., Inc.*, No. 17-775, 2020 WL 4547294, at *3 (D.N.M. Aug. 6, 2020) (citations omitted). However, because "[a] corporation is a distinct legal entity that can act only through its agents," an agency relationship between a parent corporation and a subsidiary may confer *specific* personal jurisdiction over the parent. *See Daimler*, 571 U.S. at 135 n.13 (quoting 1 W. Fletcher, Cyclopedia of the Law of Corps. § 30 (Supp. 2012–2013)). "[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Id.* (citation omitted).

*See also Curtis Publ'g Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir. 1962) ("[A] wholly owned subsidiary may be an agent[,] and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the in personam jurisdiction of the state in which the activities occurred.")

Determining whether personal jurisdiction exists over a parent corporation due to actions of a subsidiary, based on a theory of agency, is a fact-intensive question. *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1241 (D.N.M. 2019). "When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (quoting *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975)). "While the district court has broad discretion in determining whether to permit jurisdictional discovery, a refusal to grant discovery constitutes an abuse of discretion if either the pertinent jurisdictional facts are controverted or a more satisfactory showing of the facts is necessary." *Health Grades, Inc. v. Decatur Mem'l Hosp.*, 190 F. App'x 586, 589 (10th Cir. 2006) (citation omitted).

## **ANALYSIS**

In this case, the parties have presented competing affidavits and other written evidence to support their personal-jurisdiction arguments. Defendant provided affidavits to contradict Plaintiff's Complaint and Response, and Plaintiff also provided an affidavit and additional written materials as evidence to support personal jurisdiction based on Defendant's agency relationship with its subsidiaries. *See Shrader*, 633 F.3d at 1248. Although the Court resolves all factual disputes in Plaintiff's favor, *see Dudnikov*, 514 F.3d at 1070, the underlying agency question is so intertwined with the question of personal jurisdiction that discovery is needed before the Court can

determine whether it has personal jurisdiction over Defendant, *see Mohon*, 400 F. Supp. 3d at 1242.

A.       **Competing Affidavits and Written Evidence**

The parties agree that Defendant is a real estate company that has no employees and "engag[es] the services of wholly-owned subsidiaries to support the sale of [its] property interests." *Compare* [Doc. 15] at 16, ¶¶ 7–8, *with* [Doc. 1-1] at 3, ¶¶ 14–16. The parties also agree that Defendant itself "did not conduct telemarketing activities or make telephone calls to solicit sales from potential customers" or "make any of the calls alleged by Plaintiff." *Compare* [Doc. 15] at 17, ¶¶ 19–20, *with* [Doc. 1-1] at 3, ¶¶ 15, 18. Defendant asserts, and Plaintiff does not dispute, that "[a]ll telemarketing activities directed to [Defendant's] potential customers are conducted by Resort Sales Missouri, Inc. . . . or by Resort Sales by Spinnaker, Inc. . . . (together, the 'Resort Sales Companies'), or by the independent telemarketing vendors hired by [those] companies." [Doc. 15] at 17, ¶ 22. The parties further agree that Defendant does "not train or supervise [the Resort Sales Companies] for telemarketing compliance," which Defendant asserts is because it does "not control the day-to-day operations or management of the Resort Sales Companies" that have "separate corporate financial identities from" Defendant. *Compare* [Doc. 1-1] at 5, ¶ 25, *with* [Doc. 15] at 17, ¶¶ 23–24. Plaintiff contends that the above facts are evidence of Defendant's "direction and . . . control," or at least its "knowledge, approval[,] and ratification" of, its subsidiaries' telemarketing practices because it "facilitate[s], condone[s], and reli[es] on" illegal robocalls for profit. [Doc. 1-1] at 4, ¶ 18, 5, ¶ 21.

1. Plaintiff's factual allegations and evidence

Plaintiff alleges that Defendant used its agents to repeatedly robocall Plaintiff's phone, "using a device that caused Plaintiff's Caller ID to display New Mexico area code phone numbers" to make Plaintiff believe it was a legitimate local caller. [Doc. 1-1] at 6, ¶¶ 29–32. Plaintiff rebutted Mr. Matthews's first affidavit with his own affidavit and other written evidence in support of his contention that the callers were Defendant's agents. *See* [Docs. 21-1, 21-2, 21-3, 21-4]. Based on his personal knowledge, Plaintiff testified that he received a call from Nick, who referenced the previous robocalls as a reason for calling. *See* [Doc. 21-1] at 2, ¶ 5; [Doc. 1-1] at 7, ¶ 38. When Nick introduced himself, he stated that he was from "Spinnaker Resorts." [Doc. 21-2] at 2, 3:7. Carmen ultimately took over the call with Plaintiff, stated that she was a manager at "Spinnaker," and referenced "Spinnaker" two other times. [Doc. 21-2] at 3–5, 8:3, 10:6, 13:22–14:12.

Plaintiff further testified that his credit card was charged $100 for a deposit for a vacation package that he agreed to purchase while he was on the phone with Carmen. *See* [Doc. 21-1] at 2, ¶ 5; [Doc. 1-1] at 8, ¶¶ 41–42. The phone number of the credit card merchant matched a customer service number controlled by Defendant or its agent. [Doc. 1-1] at 8, ¶¶ 43–44. Plaintiff also testified that Carmen asked for his email address so that she could send him confirmation of his purchase. *See* [Doc. 21-1] at 2, ¶ 5; [Doc. 1-1] at 9, ¶¶ 48–50. The confirmation letter, attached to an email, referenced "Spinnaker Resorts" in multiple places. [Doc. 21-3] at 1; [Doc. 1-1] at 20–22. Additionally, in the Terms and Conditions on the second page of the letter, Defendant ("Spinnaker Resorts, Inc.") is listed as one of the companies that might present a sales pitch during Plaintiff's vacation. [Doc. 1-1] at 22; [Doc. 21-3] at 2. The confirmation letter appeared to have been generated from a website, spinnakerresorts.com. *See* [Doc. 21-3].

Plaintiff further contends that Defendant controls the website "www.spinnakerresorts.com" that is actively used to communicate with robocalled customers. [Doc. 1-1] at 9, ¶¶ 53–54. In support of this contention, Plaintiff submitted a copy of the website's privacy policy, which shows that "Spinnaker Resorts, Inc. [Defendant] . . . operates the website" and that its address is "35 Deallyon Avenue, Hilton Head Island, South Carolina 29928." [Doc. 21-1] at 5. Moreover, the confirmation letter shows the same South Carolina address is associated with the website, and Mr. Matthews's first affidavit shows the same South Carolina address as his place of employment with Defendant. [Doc. 21-3]; [Doc. 15] at 15, ¶ 3. Plaintiff contends that Defendant's control of the website is evidence that the callers contacted him on behalf of Defendant because the callers sent Plaintiff the confirmation letter from Defendant's website. *See* [Doc. 21-1] at 5; [Doc. 21] at 11–12.

2. Defendant's evidence to controvert Plaintiff's allegations

To controvert Plaintiff's allegations that Defendant's agents made the telemarketing calls, Defendant provided testimony from Mr. Matthews, stating that Defendant "did not hire or contract with independent third-party marketing vendors to conduct telemarketing activities." [Doc. 15] at 17, ¶ 21. Furthermore, to controvert Plaintiff's credit card allegations, Mr. Matthews testified that Defendant "did not engage in a credit card transaction with Plaintiff[,] . . . did not sell Plaintiff a vacation package[,] . . . [and] did not send Plaintiff a 'confirmation package,' 'letter,' or any email communications related to a vacation package." [Doc. 22] at 12–13, ¶¶ 5–9. Finally, to controvert Plaintiff's website allegations, Mr. Matthews stated that the website and its associated sailing-ship logo are part of the "brand identity for a family of companies," which includes both of the subsidiary Resort Sales Companies. [Doc. 15] at 18, ¶¶ 29–30. Importantly, Mr. Matthews's

9

statements about the logo and website do not deny that the brand identifiers could also include Defendant. *See id.*

**B.      Agency Relationship in Question**

Even resolving all factual disputes in the parties' affidavits in favor of Plaintiff, *see Dudnikov*, 514 F.3d at 1070, "a more satisfactory showing of the facts is necessary," *see Health Grades*, 190 F. App'x at 589, to determine whether this Court has personal jurisdiction over Defendant. Plaintiff rests his personal-jurisdiction argument on Defendant's vicarious liability for its subsidiaries' telemarketing calls. *See* [Doc. 21] at 20. The telemarketing calls alleged in the Complaint establish minimum contacts in New Mexico. *See* [Doc. 1-1] at 6–7; *Mohon*, 400 F. Supp. at 1242. The callers specifically contacted a New Mexico telephone number—505-506-1511—to sell the product, a vacation package. [Doc. 1-1] at 6–7. Moreover, the callers also attempted to appear as local callers from New Mexico. [Doc. 1-1] at 6. The issue the Court must decide is whether the callers were acting as Defendant's agents.

Plaintiff offered evidence which suggests that Defendant's subsidiaries were its agents and "doing [the] business of" Defendant when they made the calls. *See Curtis Publ'g Co.*, 302 F.2d at 137. Plaintiff's allegations—about purchasing a vacation package from "Spinnaker Resorts" through the telemarketing calls; the confirmation letter immediately following the call with Carmen; the credit card charge, also immediately following the call with Carmen, by a merchant with a phone number associated with Defendant; and Carmen's ability to communicate to Plaintiff through the website apparently operated by Defendant—all suggest that the callers were acting as Defendant's agents. *See Mohon*, 400 F. Supp. at 1235–36 (outlining common-law agency principles). However, even resolving all these factual disputes in Plaintiff's favor, *see Dudnikov*,

514 F.3d at 1070, "a more satisfactory showing of the facts is necessary," *see Health Grades*, 190 F. App'x at 589. Plaintiff's allegations and evidence suggest, but do not establish, a direct connection between Defendant and the calls. All the references to "Spinnaker Resorts" in the call with Nick and Carmen and the confirmation letter do not establish that Defendant had minimum contacts with New Mexico. Nor does the credit card charge, by a merchant with a phone number purportedly associated with Defendant, establish that Defendant had minimum contacts with New Mexico. Finally, the privacy policy of the website, which states that Defendant operates the website, is not sufficient to establish minimum contacts.

Determining whether personal jurisdiction exists over a parent corporation due to actions of a subsidiary, based on a theory of agency, is a fact-intensive question. *Mohon*, 400 F. Supp. 3d at 1241. At this stage, Defendant possesses the better information and the better access to information on its relationship with its subsidiaries. The Court agrees with Plaintiff that discovery is necessary for him to more fully address Defendant's Motion to Dismiss. Accordingly, before deciding the agency issue that is intertwined with the personal-jurisdiction issue, the Court will grant Plaintiff jurisdictional discovery.

## **CONCLUSION**

The Court concludes that Plaintiff has shown that disputed factual issues exist on the underlying agency question that is intertwined with the issue of personal jurisdiction. Therefore, the Court will deny without prejudice Defendant's Motion to Dismiss [Doc. 15] and grant Plaintiff's Motion for Jurisdictional Discovery [Doc. 27]. The parties are advised to heed the Court's guidance as discussed on the record at oral argument regarding the scope of such

discovery, *see* [Doc. 35] (clerk's minutes), and to follow the Federal Rules of Civil Procedure to "secure the just, speedy, and inexpensive determination" of this action. *See* Fed. R. Civ. P. 1.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion to Dismiss [Doc. 15] is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Jurisdictional Discovery [Doc. 27] is **GRANTED**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**